* JUDGE ROANE,
after stating the case. It is not necessary, in this case, to inquire, whether a judgment for the premiums could not have been legally obtained against Maund, personally, by motion or otherwise; nor whether the land in question could not be made liable in the hands of the appellee, for the sum recovered; nor even whether the appellee himself is, or is not liable personally therefor, if proceeded against by a regular suit at law, or bill in equity: nor is it necessary to inquire, whether if a remedy by motion had been given against the purchaser from a subscriber, it would have been a good defence against that motion, that the Societj' had not given the notice to the purchaser which is made the ground of the defendant’s objection in the County Court. In the actual case before us, a plainer and broader question arrests us at the threshold; and that is, whether a summary judgment can be rendered against the purchaser from a subscriber, for a premium upon property which, although declared for, is not insured by reason that the said premium has not been paid? The 8th sect, of the act of 1794, (d) relating to the liability of purchasers and mortgagees, is undoubtedly confined to cases of property, the insurance of which has been perfected, by the payment of the premiums. The term “subscriber” mentioned in the latter part thereof, must be construed to mean “member;” both because the property, which the section was contemplating in the first part thereof, is “property insured by virtue of the act,” (which is not the case of property merely declared for;) because this same idea is kept up by the part of the section which makes it incumbent on the person transferring, to apprize the purchaser of the assurance, and endorse to him or them the policy thereof; and because, in the last part of the said section, the property is declared to be liable for “the quotas,” (and not the premiums,) and therefore is to be confined to cases in which quotas only are due, or in other words, to cases in which policies hays issued. The same, or a correspondent interpretation must be given to the term “subscribers” mentioned in the 6th section; which section, also, (upon the whole context thereof,) relates only to property of which the assurance has been perfected. With respect to the 10th section, it relates expressly, it is true, to “subscribers” (i. e. such as have not paid their premiums), and makes them and their property liable for the payment of such premiums; but there it stops: it 593 neither gives a ^remedy by motion against such subscribers, or gives any remedy at all against the purchasers from such subscribers. These two essential ingredients are not to be found in this act, nor in any other act, that I have been able to discover; however the general liability of purchasers may stand, on grounds dehors the particular acts of our Legislature. With respect to this remedy by motion, it was first given to the fire company by the act of 1799, c. 30. (e) The preamble thereof states the justice and expediency of giving an immediate recovery against “delinquent subscribers or members;” and the enacting clause is only commensurate therewith, and does not go further: this remedy is not given by that act, or any other, against those who claim under subscribers, by purchase, or otherwise. The testimony of this Court has been often emphatically borne against the extension of summary remedies. In the case of Asberry v. Calloway, (f) it was held, that an act of Assembly directing judgment to be rendered for the principal sum, with which a Sheriff was chargeable, and the damages, and not for the penalty, to be discharged by such payment, ought “to be strictly pursued ; on the ground of being a new remedy contrary to the course of the common law;” although it is not easy to be discerned that the defendant could have been injured by the deviation, and, if not so injured, would not (in other cases) have been entitled to succeed upon an appeal, under the decisions of this Court; and, in the case of Anderson v. Bernard, (g) the Court was divided on the question, whether a Sheriff could justify making a distress on account of fees due to “A. C. deputy clerk,” on the ground that the law only allows distresses for fees due to Clerks. Various other instances might be added to the catalogue ; but I presume it requires no further proof to shew that a man is not to be ousted of his ordinary and constitutional mode of trial, unless (at least) it be by an express legislative declaration, or by a constructive declaration so strong as to leave no doubt of the meaning of the legislature, that another remedy should be substituted. On this ground, I am of opinion, that the judgment of the District Court reversing that of the County Court is correct, and should be affirmed.
*236 JUDGE FLEMING.
Two questions were made by the appellant’s counsel in this case. First, whether Maund would £94 have *been liable, and subject to a judgment on motion, had the transfer not been made? and, if so, secondly, whether Barton, who purchased from him, be not equally liable?
As to the first point, whether Maund would have been liable, and subject to a judgment on motion, it seems admitted by the appellee’s counsel, as being too clear to be controverted. With respect to the second point, whether the appellee be equally •liable, it requires more consideration. Let us recur, first, to the act of Assembly, passed in December, 1794, establishing the Mutual Assurance Society, and a subsequent act of 1799; and, secondly, to the objections stated in the bill of exceptions, taken at the trial in the County Court of Spottsylvania.
By the 8th section of the act of 1794, “subscribers selling, mortgaging, or otherwise transferring such property, shall, at tne time, apprize the purchaser or mortgagee of such assurance, and endorse to him or them the policy thereof; and, in every case of such change, the purchaser or mortgagee shall be considered as a subscriber, in the room of the original; and the property so sold, mortgaged, or otherwise transferred, shall still remain liable for payment of the ¿quotas, in the same manner as if the right thereof had remained in the original owner.”
By the 10th section, “the subscribers, in default of paying the premiums, at the time fixed therefor, shall, on the request of the cashier, be compelled to pay the same, with six per cent, interest thereon, to the day of payment, ” &c. By the 8th section, “in every case of such change,” (that is, by sale, mortgage, or other transfer,) “the purchaser or mortgagee shall be considered as a subscriber, in the room of the original;” and, in my conception, subject to all regulations, judgments and penalties, that the original subscriber would have been subject to, had such change or transfer never been made: otherwise, the frequent sales, or transfers of assured property would greatly tend to abolish the institution altogether.
The act of January, 1799, gives to the society power to recover, on motion, the whole, or any part, of such premiums or quotas, of delinquent subscribers, “saving the trial by Jury, if required;” and, under the 8th section of the act of 1794, I consider Barton a subscriber so far as respects the premium; but, no policy having ever issued, he is no farther liable. And £95 he *had an option to be tried by a Jury, but declined it; and therefore had no cause to complain of the summary proceeding.
Let us next consider the objections stated in the bill of exceptions, taken at the trial in the County Court. First, that no policy had ever issued on the declaration, or subscription of Maund. And, secondly, that the plaintiff did not prove a notice from Maund to Barton, who purchased the property of him, until the purchase-money for the same had been paid.
The reason why no policy had issued to Maund was, that he had never paid the premium on which the policy should have issued ; and therefore was not entitled to one; and that premium, still in arrear, is the subject of this controversy. The want of a policy, then, (by no means imputable to the society) cannot, in my conception, affect the merits of this case.
The circumstance, however, of the assurance being incomplete, exempts the property from being bound for the quota; but does not, I conceive, exempt the appellee from, being personally responsible for the premium. “But,” says the bill of exceptions, “there was no proof of notice from Maund to Barton, at the time of the purchase, nor until the purchase-money had been paid.” And the counsel relied on the general principies of law, equity, and fair dealing, respecting the subject of notice; but general principles do not apply to the case before us. Neither law, equity, nor fair dealing, requires that to be done, which, from the nature of things, is impossible. The plaintiff, in Spottsylvania Court, was required to prove a notice from Maund to Barton, at the time of the transfer, when it was impossible that he, or the society, whose agent he was, could have any knowledge of the transaction between them. And such transfers frequently take place at the distance of some hundreds of miles from the office of the society. The law requires, indeed, that the seller'of insured property shall, at the time of the transfer, apprize the purchaser of such assurance, &c. “to the end,” says the preamble of the clause, “that purchasers of property insured by the act, may not be losers thereby,” which is a matter merely between the seller and purchaser; and if Maund, in the case before us, failed so to apprize the purchaser, the society should not be responsible for, nor injured by, the neglect: but the appellee must have recourse to the representatives of Maund for redress of anj' injury he may sustain in consequence of the omission.
*On these grounds, I am of opinion that the judgment of the District Court ought to be reversed, and that of the County Court affirmed. But the Court being divided, the latter judgment must be affirmed.

 2 Rey. Code, App. (No. VII.) p. 76.

 2 Rev. Code, App. (No. VII.) p. 78.

 1 Wash. 74.

 1 Wash. 177.